IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| HUSCH BLACKWELL LLP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:19-cv-880 (AJT/TCB) |
| | ) | |
| WASHINGTON METROPOLITAN | ) | |
| AREA TRANSIT AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM SUPPORTING HUSCH BLACKWELL'S
CROSS-MOTION FOR SUMMARY JUDGMENT AND
OPPOSING WMATA MOTION FOR SUMMARY JUDGMENT**

Plaintiff Husch Blackwell LLP submits this memorandum in support of its Cross-Motion

for Summary Judgment and in Opposition to the Motion for Summary Judgment filed by

Defendant Washington Metropolitan Area Transit Authority. (*See* ECF No. 14.)

Brian P. Waagner (VA Bar No. 37202)
George E. Stewart (VA Bar No. 91097)
Husch Blackwell LLP
750 17th Street, NW, Suite 900
Washington, D.C. 20006
Telephone: (202) 378-2300
Facsimile: (202) 378-2319
brian.waagner@huschblackwell.com
george.stewart@huschblackwell.com

*Counsel for Plaintiff Husch Blackwell LLP*

1

## **<u>TABLE OF CONTENTS</u>**

INTRODUCTION .......................................................................................................................... 5

STATEMENT OF UNDISPUTED FACTS ................................................................................... 5

STATEMENT OF DISPUTED FACTS ........................................................................................ 8

STANDARD OF REVIEW ......................................................................................................... 11

ARGUMENT .............................................................................................................................. 11

    I.    WMATA has not proved the facts necessary to establish the applicability of
          PARP Exemption 6.1.5. .................................................................................................... 11

    II.   The plain language of PARP Exemption 6.1.5 does not extend to documents
          prepared by third-party consultants. ................................................................................. 16

    III.  WMATA must at least provide a redacted version of the TTT Report. .......................... 19

    IV.  This Court should order an *in camera* review of the TTT Report. ................................. 20

CONCLUSION ............................................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*Arthur Andersen & Co. v. I. R. S.*, 679 F.2d 254 (D.C. Cir. 1982) ................................ 15

*Bay Area Lawyers All. for Nuclear Arms Control v. Dep't of State*, 818 F. Supp. 1291 (N.D. Cal. 1992) .................................................................................................................. 13

*Bloomberg, L.P. v. U.S.S.E.C.*, 357 F. Supp. 2d 156 (D.D.C. 2004)............................................ 14

*Carter v. U.S. Dep't of Commerce*, 830 F.2d 388 (D.C. Cir. 1987) ............................................ 20

*Carter, Fullerton & Hayes v. F.T.C.*, No. 1:12-CV-448, 2013 WL 653288 (E.D. Va. Feb. 21, 2013) ........................................................................................................................... 20

*Challenger Transp., Inc. v. Washington Metro. Area Transit Auth.*, No. TDC-I4-3322, 2017 WL 7691746 (D. Md. Nov. 28, 2017) ..................................................................................... 11

*City of Virginia Beach v. U.S. Dep't of Commerce*, 995 F.2d 1247 (4th Cir. 1993) ........ 12, 13, 19

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980)...................... 12, 15

*Competitive Enter. Inst. v. Dep't of State*, 225 F. Supp. 3d 582 (E.D. Va. 2016) ........... 12, 13, 14

*Davin v. U.S. Dep't of Justice*, 60 F.3d 1043 (3d Cir. 1995)........................................................ 20

*Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001) ......................... 17

*Elec. Privacy Info. Ctr. v. Dep't of Justice*, 584 F. Supp. 2d 65 (D.D.C. 2008).......................... 20

*ERG Transit Sys. (USA), Inc. v. WMATA*, 593 F. Supp. 2d 249 (D.D.C. 2009)........................... 11

*Ethyl Corp. v. U.S. E.P.A.*, 25 F.3d 1241 (4th Cir. 1994)............................................................. 12

*Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356 (2019)................................. 18

*Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286 (4th Cir. 2004)........................................... 17

*Heartland All. for Human Needs & Human Rights v. United States Dep't of Homeland Sec.*, 291 F. Supp. 3d 69 (D.D.C. 2018)............................................................................................. 19

*Hunton & Williams v. U.S. Dep't of Justice*, 590 F.3d 272 (4th Cir. 2010) ................................ 17

*Judicial Watch, Inc. v. Dep't of Army*, 435 F. Supp. 2d 81 (D.D.C.) ........................................... 15

*Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141 (D.C. Cir. 2006) ............................. 12

*Judicial Watch, Inc. v. U.S. Dep't of State*, 306 F. Supp. 3d 97 (D.D.C. 2018) ........................... 16

*Kimberlin v. Dep't of Justice*, 139 F.3d 944 (D.C. Cir. 1998) ....................................................... 19

*King v. U.S. Dep't of Justice*, 830 F.2d 210 (D.C. Cir. 1987) ....................................................... 13

*Lee v. F.D.I.C.*, 923 F. Supp. 451 (S.D.N.Y. 1996) ....................................................................... 15

*Lucaj v. Federal Bureau of Investigation*, 852 F.3d 541 (6th Cir. 2017) .............................. 17, 18

*Rojas v. Federal Aviation Administration,* 927 F.3d 1046 (9th Cir. 2019) ........................... 17, 18

*Solers, Inc. v. Internal Revenue Serv.*, 827 F.3d 323 (4th Cir. 2016) ........................................... 14

*Wickwire Gavin, P.C. v. U.S. Postal Serv.*, 356 F.3d 588 (4th Cir. 2004).................................... 11

*Wilderness Soc. v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1 (D.D.C. 2004) .............................. 14

**Statutes**

5 U.S.C. § 552.............................................................................................................................. 11, 16

**Rules**

Rule 56 ..................................................................................................................................... 5, 8, 11

## INTRODUCTION

This case asks the Court to determine whether a 48-page third-party consultant report relating to the construction of the Silver Line Metro Extension Project may be withheld from the public under WMATA's Public Access to Records Policy ("PARP"). WMATA asserts that the Report is exempt from public release under PARP Exemption 6.1.5, which is in all material respects identical to Exemption 5 of the Freedom of Information Act. In fact, WMATA has not met its burden of proving the requisite factual basis for the application of Exemption 6.1.5, much less justified its decision to withhold the entirety of the document. WMATA's Exemption 5 claim is furthermore inconsistent with the plain language of the PARP and with recent FOIA case law. Husch Blackwell seeks an order requiring WMATA to release the consultant report to the public. In the alternative, Husch Blackwell seeks an order requiring WMATA to provide the report to the Court for an *in camera* inspection.

## STATEMENT OF UNDISPUTED FACTS

Pursuant to Rule 56(c)(1) of the Federal Rules and Rule 56(B) of the Local Rules, Husch Blackwell states that the following are the undisputed material facts relevant to the pending cross-motions for summary judgment:

1. WMATA maintains the PARP, which serves as a written policy to guide requests for official public records. (Complaint, Ex. A (ECF 1-2).) Under the PARP, records must be made available to the public upon request unless they are exempted from disclosure. PARP § 1.0.

2. On May 7, 2019, Husch Blackwell submitted a PARP request seeking "all reports, memoranda, presentations, and other similar documents completed after June 1, 2018 that reflect or summarize the results of testing, evaluation, analysis, or assessment of the concrete turnout

5

ties installed on the Phase II Dulles Silver Line Extension project." (Complaint Ex. B (ECF 1-3); *see also* WMATA SUF ¶ 17.) In accordance with the PARP, the May 7 PARP request was submitted by email to the PARP administrator at parp@wmata.com. (Complaint Ex. B (ECF 1-3).)

3.      The Silver Line Metro Extension Project is of significant public interest, and the concrete turnout ties on the project have been the subject of articles in the local media. (Ex. 1 (Waagner Decl. ¶ 3); *see also* Lori Aratani, *New problems for the Silver Line Phase 2: Officials say rail ties are flawed*, Wash. Post, (Dec. 12, 2018, 6:58 PM),

https://www.washingtonpost.com/local/trafficandcommuting/new-problems-for-the-silver-line-phase-2-officials-say-rail-ties-are-flawed/2018/12/11/6517bb24-fca3-11e8-ad40-cdfd0e0dd65a_story.html.)

4.      On May 21, 2019, WMATA sent an email acknowledging receipt of the May 7 PARP request. WMATA's May 21 email did not provide a substantive response to the request. WMATA did not provide an estimate as to when responsive documents would be produced and did not address whether it intended to withhold any responsive documents or to assert any available PARP exemptions. (Ex. 1 (Waagner Decl. ¶ 4); Ex. 1-A, at 3-5.)

5.      On June 6, 2019, after Husch Blackwell sent an email to WMATA inquiring about the status of the PARP request, WMATA responded that it had located a large number of records that may be responsive to the PARP request. WMATA stated that it would provide Husch Blackwell an estimate of when the responsive documents would be produced the following week. (Ex. 1 (Waagner Decl. ¶ 5); Ex. 1-A, at 2-3.)

6.      On June 13, 2019 and June 19, 2019, Husch Blackwell sent follow-up emails inquiring about the status of WMATA's response. WMATA did not respond to the June 13 or June 19 emails. (Ex. 1 (Waagner Decl. ¶¶ 6-7); Ex. 1-B, at 1; Ex. 1-A, at 1.)

7.      Husch Blackwell filed this action on July 1, 2019. (Ex. 1 (Waagner Decl. ¶ 9); Complaint (ECF 1).)

8.      On July 2, 2019, WMATA provided Husch Blackwell with an estimate of the search and duplication charges that would be incurred to produce documents responsive to the May 7 PARP request and invited Husch Blackwell to narrow the PARP request. (Ex. 1 (Waagner Decl. ¶ 10); Ex. 1-C.)

9.      On July 5, 2019, WMATA provided Husch Blackwell with an index of records responsive to the May 7 PARP request. Among the documents listed on WMATA's index is a 48-page report entitled "Transportation Technology Transfer (TTT) Technical Report—Expert Review of Concrete Turnout Ties." (Ex. 1 (Waagner Decl. ¶ 11); Ex. 1-D, at 7; Ex. 1-E.)

10.     Upon information and belief, Transportation Technology Transfer, Inc. ("TTT"), is a third-party consultant engaged by WMATA to evaluate the concrete turnout ties on the Silver Line Project. (Leader Decl. ¶ 9 (ECF 15-1); Edwards Decl. ¶ 3 (ECF 15-2).) Upon information and belief, TTT is a consulting firm specializing in materials for railroad, highway, and airport infrastructure. (Edwards Decl. ¶ 2 (ECF 15-2).)

11.     Upon information and belief, the TTT Report is a factual report prepared by a third-party consultant and does not represent the internal deliberations of WMATA. (Edwards Decl. ¶ 3 (ECF 15-2).) Furthermore, WMATA has only provided a conclusory statement that no

final determination has been made and does not provide any more information for Husch

Blackwell or the Court to make this conclusion. (Leader Decl. ¶ 9 (ECF 15-1).)

12.     On July 8, 2019, in an effort to expedite WMATA's production, Husch Blackwell

proposed that WMATA produce the TTT Report in advance of the other responsive documents.

In exchange, Husch Blackwell indicated its willingness to provide WMATA additional time to

review and produce the remaining records. (Ex. 1 (Waagner Decl. ¶ 12); Ex. 1-D, at 5.) WMATA

did not respond to this proposal. (Ex. 1 (Waagner Decl. ¶ 13).)

13.     On July 8, 2019, Husch Blackwell paid WMATA's estimated search and

duplication charges. (Ex. 1 (Waagner Decl. ¶ 14); Ex. 1-D, at 2-3.)

14.     On August 5, 2019, WMATA provided Husch Blackwell with an email setting

forth WMATA's response to the May 7 PARP Request. (Ex. 1 (Waagner Decl. ¶ 15); Ex. 1-F.)

WMATA's August 5 email stated that it intended to withhold the TTT Report in its entirety

pursuant to PARP Exemption 6.1.5. (Ex. 1 (Waagner Decl. ¶ 15); Ex. 1-F.) WMATA's email

stated that the TTT Report was "commissioned to aid WMATA in making a final decision" and

that it is "both pre-decisional and deliberative in nature, and therefore, is privileged." (Ex. 1-F, at

2.) WMATA did not produce the TTT Report. (Ex. 1-F, at 2.)

## STATEMENT OF DISPUTED FACTS

Pursuant to Rule 56(B) of the Local Rules, Husch Blackwell states that the following are

the material facts to which there is a genuine issue:

1.     Husch Blackwell disputes WMATA's assertion in paragraph 8 of its Statement of

Facts that TTT was engaged in "deliberations." The evidence upon which WMATA relies for

this assertion does not establish that there is no genuine issue of fact on this point. (*See* Edwards

Decl. ¶ 2 (ECF 15-2).) WMATA only states that there were internal deliberations and does not specifically describe sufficient facts for Husch Blackwell or the Court to determine whether deliberations actually occurred or whether the TTT Report would reveal them. Furthermore, upon information and belief, the 48-page TTT Report sets forth factual information and engineering analyses prepared by a third-party consultant and does not itself reflect WMATA's deliberations.

2.     Husch Blackwell disputes the assertion in paragraph 10 of WMATA's Statement of Facts that no final determination has been made at WMATA. WMATA has provided only a conclusory statement that no final determination has been made and does not provide sufficient information for Husch Blackwell or the Court to make this conclusion. (*See* Leader Decl. ¶ 9 (ECF 15-1).)

3.     Husch Blackwell disputes the assertion in paragraph 11 of WMATA's Statement of Facts that the TTT Report is not finalized because of "ongoing deliberations within WMATA." (*See* Edwards Decl. ¶ 5 (ECF 15-2).) There is insufficient information for Husch Blackwell or the Court to conclude whether the TTT Report is not final from this statement.

4.     Husch Blackwell disputes the assertion in paragraph 16 of WMATA's Statement of Facts that WMATA is not required to process a PARP request before receiving payment. PARP states that a fee in excess of $250 shall be paid "before the Authority is required to respond to any further request." PARP § 8.9. WMATA is required to begin processing its response to a PARP request before receiving payment. PARP § 8.9.

5.     Husch Blackwell disputes the assertions in paragraph 20 of WMATA's Statement of Facts to the extent that they suggest that Husch Blackwell filed suit prematurely or without exhausting administrative remedies. Section 9.2.3 of the PARP provides that a requester has

exhausted its administrative remedies "if WMATA fails to issue a decision on a request within twenty (20) working days or within the time authorized by any extension pursuant to 7.10.1." Section 7.10.1 allows WMATA limited additional time to process a PARP request only in "unusual circumstances." This action was filed more than 30 working days after WMATA's receipt of the May 7 PARP request and WMATA has not established that unusual circumstances exist.

6.      Husch Blackwell disputes the assertion in paragraph 22 of WMATA's Statement of Facts that Husch Blackwell declined to narrow the scope of the May 7 PARP request. Husch Blackwell made it clear to WMATA that the focus of its request was the TTT Report and that it would allow WMATA additional time to identify and produce responsive documents in exchange for its agreement to expedite production of the TTT Report. (Ex. 1 (Waagner Decl. ¶ 11); Ex. 1-D at 5.) WMATA did not respond to this proposal. (Ex. 1 (Waagner Decl. ¶ 12).)

7.      Husch Blackwell disputes the assertion in paragraph 24 of WMATA's Statement of Facts that the TTT Report is a "draft." The evidence upon which WMATA relies for this assertion does not establish that there is no genuine issue of fact on this point. WMATA has provided only a vague statement that TTT is "still evaluating various solutions proposed by the contractor to solve the cross-level deviation issue." (Edwards Decl. ¶ 5 (ECF 15-2).)

8.      Husch Blackwell disputes the assertion in paragraph 26 of WMATA's Statement of Facts that the TTT Report is privileged. For the reasons stated in this memorandum, WMATA has not established the factual basis to assert that the TTT Report is privileged or otherwise within the scope of an available PARP Exemption.

## STANDARD OF REVIEW

WMATA's Public Access to Records Policy is closely analogous to the Freedom of Information Act. *See* PARP § 1.0 ("WMATA will interpret and apply this policy consistent with the federal Freedom of Information Act (FOIA), 5 U.S.C. § 552, and federal practice, including when determining whether to waive exemptions."); *ERG Transit Sys. (USA), Inc. v. WMATA*, 593 F. Supp. 2d 249, 250 (D.D.C. 2009) (for purposes of determining whether certain records are exempt from compelled disclosure, "WMATA's Public Access to Records Policy . . . is identical to, and interpreted in accordance with, the FOIA."). Under PARP and FOIA, a district court reviews a public record disclosure determination *de novo*. PARP § 9.3.3; 5 U.S.C. § 552 (a)(4)(B). *Challenger Transp., Inc. v. Washington Metro. Area Transit Auth.*, No. TDC-I4-3322, 2017 WL 7691746, at *18 (D. Md. Nov. 28, 2017).

The propriety of an agency decision to withhold documents under FOIA is generally resolved on summary judgment. *Wickwire Gavin, P.C. v. U.S. Postal Serv.*, 356 F.3d 588, 591 (4th Cir. 2004). Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including . . . documents, electronically stored information, affidavits, or declarations . . ." that there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

## ARGUMENT

I.   **WMATA has not proved the facts necessary to establish the applicability of PARP Exemption 6.1.5.**

In order to justify its decision to withhold the TTT Report from release to the public, WMATA bears the burden of demonstrating that it falls within the scope of PARP Exemption 6.1.5. *See Challenger Transp.*, No. TDC-I4-3322, 2017 WL 7691746, at *18. To

make this showing, WMATA must demonstrate that the TTT Report is "both predecisional and deliberative." *Competitive Enter. Inst. v. United States Dep't of State*, 225 F. Supp. 3d 582, 587 (E.D. Va. 2016) (citing *City of Virginia Beach v. U.S. Dep't of Commerce*, 995 F.2d 1247, 1253 (4th Cir. 1993)). A document is predecisional if "it was generated before the adoption of an agency policy." *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 151 (D.C. Cir. 2006) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)). To qualify as deliberative, the document must reflect the "'give-and-take of the consultative process' by revealing the manner in which the agency evaluates possible alternative policies or outcomes." *City of Virginia Beach*, 995 F.2d at 1253 (quoting *Coastal States*, 617 F.2d at 866). "Thus, the privilege does not protect a document which is merely peripheral to actual policy formulation; the record must bear on the formation or exercise of policy-oriented judgment." *Ethyl Corp. v. U.S. E.P.A.*, 25 F.3d 1241, 1248 (4th Cir. 1994). "A purely factual statement is not protected by the [deliberative process] privilege." *Competitive Enter.*, 225 F. Supp. 3d at 587 (ordering public release of factual statements in emails between White House and State Department officials).

WMATA has failed to meet its burden to establish that there are no genuine issues of material fact relevant to whether the TTT Report falls within the scope of PARP Exemption 6.1.5 or the deliberative process privilege. As a threshold matter, the declarations offered by WMATA in support of its motion are too conclusory and insufficiently detailed to support its motion for summary judgment. They do not provide sufficient facts to support WMATA's assertion that the TTT Report itself reveals WMATA's deliberative process. They do not rebut the obvious inference that the TTT Report sets forth facts to which the deliberative process does not apply.

And they do not explain why there are no segregable portions of the 48-page TTT Report that could be released. On the basis of the information submitted by WMATA, its motion for summary judgment must be denied. *See, e.g., Bay Area Lawyers All. for Nuclear Arms Control v. Dep't of State*, 818 F. Supp. 1291, 1300 (N.D. Cal. 1992) (citing *King v. U.S. Dep't of Justice*, 830 F.2d 210, 217-19 (D.C. Cir. 1987) (denying agency motion for summary judgment where agency's evidence was too conclusory and insufficiently detailed).

The details that WMATA does offer compel the conclusion that the TTT Report is not protected by the deliberative process privilege. First, WMATA's declarations indicate that the TTT Report is an assessment of facts rather than a document reflecting WMATA's deliberations. The Edwards Declaration states that the TTT Report addresses "the magnitude and causes of concrete crosstie camber exceedances and their impact on the performance of the track system on the Phase II Dulles Silver Line Project." (Edwards Decl. ¶ 3 (ECF 15-2).) Factual information of the type described in the Edwards declaration is not protected by the deliberative process privilege.[1] *See Competitive Enter.*, 225 F. Supp. 3d at 587. By definition, an assessment of the

---

[1] This conclusion is consistent with the Fourth Circuit's unpublished decision in *Hennessey v. U.S. Agency For Int'l Dev.*, 121 F.3d 698 (4th Cir. 1997) (copy attached as Exhibit 2). In *Hennessey*, the Fourth Circuit Court of Appeals reversed a North Carolina District Court decision applying the deliberative process privilege to a report prepared by a scheduling expert engaged to support the position taken by the United States Agency for International Development in a construction dispute. The Fourth Circuit held that the consultant report was not protected by the deliberative process privilege because it was a factual assessment that did not "bear on the formulation or exercise of agency policy-oriented judgment." *Id.* at *5 (quoting *Virginia Beach*, 995 F.2d at 1254). While the preparation of the report necessarily involved "judgment" and "discretion" on the part of the consultant, the court concluded that the consultant's report "must ultimately be regarded as factual because it is written as an objective and retrospective recitation of historical facts." *Id.* at *4.

13

type contained in the TTT Report would contain "no insight into the opinions of any government officials or into the consultative process." *Id.*

Second, there is nothing in the evidence presented by WMATA that would suggest that the TTT Report contains WMATA's deliberations or that it would inappropriately reveal them. The TTT Report was prepared by an outside consultant and not by WMATA personnel. Such a third-party communication to WMATA in and of itself does not reveal the candid opinions of WMATA officials or what measures, if any, WMATA has taken to implement the TTT Report's conclusions. The declaration WMATA provided from TTT's J. Riley Edwards confirms this. (*See* Edwards Decl. ¶ 5 (ECF 15-2) ("Because I understand there are ongoing deliberations *within WMATA* on these topics TTT has not finalized the April 2 report commissioned by WMATA.") (emphasis added).)

Indeed, whatever conclusions might be contained in the TTT Report are not comparable to those found in the Exemption 5 case law cited by WMATA. The documents in *Bloomberg, L.P. v. U.S.S.E.C.*, 357 F. Supp. 2d 156, 169 (D.D.C. 2004), were notes prepared by agency personnel that revealed the agency's consideration of potential regulatory options. The documents in *Solers, Inc. v. Internal Revenue Serv.*, 827 F.3d 323, 330 (4th Cir. 2016), revealed the "mental processes" and "thoughts" of agency personnel and the possible future direction of an IRS investigation. There is nothing in the record here to support the necessary conclusion that the TTT Report itself reflects the mental impressions of WMATA personnel or the substance of WMATA's internal deliberations. *See Competitive Enter.*, 225 F. Supp. 3d at 587.

WMATA's claim that the TTT Report is a draft does not justify withholding it. *See Wilderness Soc. v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 14 (D.D.C. 2004) (agency cannot

invoke deliberative process privilege simply by labeling documents "drafts"). WMATA must still

prove that the record is both predecisional and deliberative. *Arthur Andersen & Co. v. I. R. S.*,

679 F.2d 254, 257–58 (D.C. Cir. 1982). Otherwise, an agency could easily sidestep its disclosure

obligations by characterizing all of its documents as drafts and broadly stating that its

deliberations are ongoing. Courts firmly reject this practice. *See, e.g.*, *Lee v. F.D.I.C.*, 923 F.

Supp. 451, 458 (S.D.N.Y. 1996) (quoting *Coastal States*, 617 F.2d at 867 (where an agency

begins using a "draft" report "in the discharge of its regular duties and in its dealings with the

public," it cannot continue to hide the document "behind a veil of privilege because it is not

designated as 'formal,' 'binding,' or 'final.'")). Here, WMATA's only proof that the TTT Report

is a "draft" is the conclusory assertion that WMATA "is still evaluating various solutions

proposed by the contractor to solve the cross-level deviation issue" and there are "ongoing

deliberations within WMATA on these topics." (Edwards Decl. ¶ 5 (ECF 15-2).) WMATA has

not addressed whether the TTT Report has the hallmarks of a document typically recognized as a

"draft." In addition to being labeled "draft," a draft document would almost certainly have mark-

ups, strikeouts, and other interlineations, including notes that reflect the mental impressions of

government personnel. When an agency has one draft document, it would likely have another

version of the same document, which would also be considered a draft. WMATA's failure to

establish these facts precludes its reliance on the document's status as a draft to support its

withholding decision. *See Judicial Watch, Inc. v. Dep't of Army*, 435 F. Supp. 2d 81, 90

(D.D.C.), *opinion modified on reconsideration sub nom. Judicial Watch v. Dep't of Army*, 466 F.

Supp. 2d 112 (D.D.C. 2006) (draft designation alone could not justify withholding memorandum

that contained no marks or corrections of any kind or a cover sheet explaining that it was a draft).

## II.  The plain language of PARP Exemption 6.1.5 does not extend to documents prepared by third-party consultants.

Independent of WMATA's failure to show that the TTT Report is deliberative and that it would reveal WMATA's decision-making process, WMATA's reliance on PARP Exemption 6.1.5 is inconsistent with the plain language of the exemption itself. By its terms, PARP Exemption 6.1.5 is limited to "*intra-agency* and *inter-agency* (WMATA Compact signatories and political subdivisions and representatives) memoranda or letters which would not be made available by law to a party in litigation with WMATA." PARP Exemption 6.1.5 (italics added). The language of PARP Exemption 6.1.5 closely tracks the language of FOIA Exemption 5, which extends to "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency . . ."). 5 U.S.C. § 552 (b)(5). There is nothing in the language of these exemptions that explicitly extends third party documents, including a consultant report prepared at the request of an agency.

Accepting WMATA's argument that the TTT Report falls within the scope of PARP Exemption 6.1.5 thus requires the Court to apply a judge-made concept referred to in FOIA litigation as the "consultant corollary." Under this approach, documents prepared by consultants are treated as "intra-agency" communications when (1) the agency solicited the records from the non-agency party or there exists "some indicia of a consultant relationship between the outsider and the agency" and (2) the records were "created for the purpose of aiding the agency's deliberative process." *See Judicial Watch, Inc. v. U.S. Dep't of State*, 306 F. Supp. 3d 97, 106–07 (D.D.C. 2018). The Fourth Circuit has recognized the applicability of the consultant corollary, though it has not applied this rule with respect to a non-lawyer consultant report. *See Hunton &*

*Williams v. U.S. Dep't of Justice*, 590 F.3d 272, 280 (4th Cir. 2010) (pre-litigation communications between private party's counsel and Justice Department lawyers in anticipation of future litigation protected by "common interest" doctrine); *Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 291 (4th Cir. 2004) (legal analysis prepared by lawyer in anticipation of litigation properly withheld under FOIA Exemption 5). The Supreme Court has not yet explicitly adopted the consultant corollary. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 12 (2001).

A recent decision of the Ninth Circuit Court of Appeals rejects the consultant corollary all together, holding that FOIA Exemption 5 is inapplicable to third-party consultant reports. *Rojas v. Federal Aviation Administration,* 927 F.3d 1046 (9th Cir. 2019). In *Rojas*, the Federal Aviation Administration sought to withhold empirical data developed by a third-party consultant developed for the FAA's use in screening job applicants. The court rejected the FAA's argument that the information was protected under FOIA Exemption 5, concluding that the consultant corollary is "contrary to Exemption 5's text and FOIA's purpose to require broad disclosure." *Rojas*, 927 F.3d at 1055. Because a consultant is not an "agency" under FOIA, a consultant's report can be neither "intra-agency" nor "inter-agency." Furthermore, the court noted that the text of FOIA Exemption 5 is limited to "memorandums or letters" rather than the broadly defined phrase "agency records" used elsewhere in the statute. If Congress had intended an expansive reading of Exemption 5, the court reasoned that Congress would have used different language in Exemption 5.

The Sixth Circuit's decision in *Lucaj v. Federal Bureau of Investigation*, 852 F.3d 541 (6th Cir. 2017), also adopts a plain-language interpretation of FOIA Exemption 5. The

Department of Justice and the Federal Bureau of Investigation sought to withhold two requests for assistance sent to Austria and another unnamed foreign government in connection with an investigation involving the requester. The agencies asserted that the documents were exempt under FOIA Exemption 5 because "inter-agency" and "intra-agency" includes agencies of other countries. The court disagreed. In the court's view, the ordinary meaning of the words "inter-" and "intra-" meant "between" or "among" and "within," respectively. From these definitions, the court concluded that requests for assistance to foreign countries were neither "inter-agency" nor "intra-agency" records because they were not between, among, or within U.S. government agencies.

The decisions in *Rojas* and *Lucaj* offer a persuasive rationale for this Court to adopt a plain-language interpretation of PARP Exemption 6.1.5 that would require the TTT Report to be released to the public. Like FOIA Exemption 5, PARP Exemption 6.1.5 is limited to "inter-agency" and "intra-agency" memoranda or letters. Without the consultant corollary, neither FOIA Exemption 5 nor PARP Exemption 6.1.5 authorize documents prepared by third-party consultants to be withheld from public release.

Adopting a plain-language interpretation of PARP Exemption 6.1.5 is consistent with the Supreme Court's recent decision in *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356 (2019), which overturns 45 years of accepted FOIA caselaw in favor of a plain-language interpretation of FOIA Exemption 4. Adopting a narrow interpretation of Exemption 6.1.5 is also consistent with the PARP, the stated purpose of which is to make records in WMATA's possession available to the public "*to the greatest extent possible*." PARP § 1.0 (emphasis added). Like other public record disclosure laws, the PARP must be interpreted in a manner that

18

provides for maximum disclosure to the public. The public has a right to know the facts about major public works projects undertaken by WMATA, especially one as high-profile as the Dulles Silver Line Metro project.

## III.     WMATA must at least provide a redacted version of the TTT Report.

Independent of whether WMATA can establish the factual and legal basis for the application of PARP Exemption 6.1.5, WMATA has failed to justify withholding the entire TTT Report rather than a redacted version that is suitable for public release. Even where portions of a record fall within one of the available exemptions, WMATA's policy requires it to produce "[a]ny reasonably segregable portion of a record . . . ." PARP § 6.2. FOIA caselaw explicitly requires release of reasonably segregable portions of a requested document, even if portions of the document itself are properly exempt from disclosure. *See City of Virginia Beach*, 995 F.2d at 1256. It is reversible error for a district court to fail to make a segregability finding. *Kimberlin v. Dep't of Justice*, 139 F.3d 944, 950 (D.C. Cir. 1998); *see also Heartland All. for Human Needs & Human Rights v. United States Dep't of Homeland Sec.*, 291 F. Supp. 3d 69, 82 (D.D.C. 2018) ("A court errs if it 'simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof.'").

WMATA has made no effort to identify portions of the 48-page TTT Report that are suitable for release to the public. Even if some portion of the TTT Report is properly withheld under the deliberative process privilege, WMATA has not addressed why these portions are so intertwined with the rest of the TTT Report that no portion of it can be disclosed. Indeed, WMATA offers only a single conclusory statement on this topic. (*See* Ex. 1-F, at 2.) Without more, WMATA's reliance on PARP Exemption 6.1.5 to justify its withholding of the entire 48-

page report must fail. *See, e.g.*, *Carter, Fullerton & Hayes v. F.T.C.*, No. 1:12-CV-448, 2013 WL 653288, at *10 (E.D. Va. Feb. 21, 2013) (agency affidavits insufficient for the court to consider whether the agency fulfilled its disclosure requirements under FOIA); *Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1052 (3d Cir. 1995) (conclusory declaration failed to describe process by which segregability determinations were made and provided no "factual recitation of why certain materials are not reasonably segregable").

IV.     **This Court should order an *in camera* review of the TTT Report.**

Based on the declarations presented by WMATA, the Court must conclude that WMATA has not established that there is no genuine issue of material fact with regard to its claim that the TTT Report falls within the scope of PARP Exemption 6.1.5. To the extent necessary to address the factual issues presented, in this case Husch Blackwell requests that the Court conduct an *in camera* review of the TTT Report. *In camera* review is appropriate where the justifications for withholding are conclusory or not described in sufficient detail to demonstrate that the claimed exemption applies. *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 392 (D.C. Cir. 1987). Courts may also conduct *in camera* review when agency affidavits are deficient with respect to segregability analysis and a relatively small number documents is at issue. *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 584 F. Supp. 2d 65, 82–83 (D.D.C. 2008) (*in camera* review of 30 documents).

<u>**CONCLUSION**</u>

For the reasons stated herein, Husch Blackwell respectfully requests the entry of summary judgment in its favor and against WMATA.

Dated: October 18, 2019        Respectfully submitted,

        /s/ Brian P. Waagner
        Brian P. Waagner (VA Bar No. 37202)
        George E. Stewart (VA Bar No. 91097)
        Husch Blackwell LLP
        750 17th Street, NW, Suite 900
        Washington, D.C. 20006
        Telephone: (202) 378-2300
        Facsimile: (202) 378-2319
        brian.waagner@huschblackwell.com
        george.stewart@huschblackwell.com

        *Counsel for Plaintiff Husch Blackwell LLP*

## **CERTIFICATE OF SERVICE**

I hereby certify that I will file the foregoing on October 18, 2019 via the Court's CM/ECF

system, which will send electronic notification of the same to the following counsel of record:

Attison L. Barnes, III
Wiley Rein LLP
1776 K Street, NW
Washington, DC 20006
Tel: (202) 719-7000
Fax: (202) 719-7049
abarnes@wileyrein.com

*Counsel for Defendant Washington
Metropolitan Area Transit Authority*

/s/ George E. Stewart
Brian P. Waagner (VA Bar No. 37202)
George E. Stewart (VA Bar No. 91097)
Husch Blackwell LLP
750 17th Street, NW, Suite 900
Washington, D.C. 20006
Telephone: (202) 378-2300
Facsimile: (202) 378-2319
brian.waagner@huschblackwell.com
george.stewart@huschblackwell.com

*Counsel for Plaintiff Husch Blackwell LLP*