**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

HUSCH BLACKWELL LLP,

Plaintiff,

v.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,

Defendant.

Case No. 1:19-cv-880 (AJT/TCB)

**OPPOSITION TO HUSCH BLACKWELL LLP'S MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY'S MOTION FOR SUMMARY JUDGMENT**

Attison L. Barnes, III (VA Bar No. 30458)
WILEY REIN LLP
1776 K Street, NW
Washington, DC 20006
Tel: (202) 719-7000
Fax: (202) 719-7049
abarnes@wileyrein.com
*Counsel for Defendant*
*Washington Metropolitan Area Transit Authority*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS .............................. 2

RESPONSE TO PLAINTIFF'S STATEMENT OF DISPUTED FACTS .................................... 7

ARGUMENT ............................................................................................................ 8

I. WMATA Properly Withheld the TTT Report to Protect Deliberative Process Privileged Information. ........................................................................................................ 8

A. WMATA Has Not Invoked the Deliberative Process Privilege Because the TTT Report Is a Draft; WMATA Invokes the Deliberative Process Privilege Because the TTT Report is Deliberative Process Privileged. ............................................... 9

B. The Deliberative Process Privilege Protects Factual Information in These Circumstances. ........................................................................................ 10

C. The Fourth Circuit Recognizes the Consultant Corollary.................................... 11

II. Plaintiff's Suspicion Is an Insufficient Basis to Demand Release of Deliberative Process Privileged Information or *In Camera* Review. ................................................................ 13

CONCLUSION ........................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Department of the Interior v. Klamath Water Users Protective Ass'n*,
532 U.S. 1 (2001)....................12

*Energy & Environment Legal Institute v. United States Department of State*,
No. 1:15-cv-423, 2017 WL 3763853 (E.D. Va. Aug. 28, 2017) (O'Grady, J.)...........11, 12, 13

*Hugler v. Bat Masonry Co., Inc.*,
Civil Action No. 6:15-cv-28, 2017 WL 1207847 (W.D. Va. Mar. 31, 2017) ....................13

*Hunton & Williams v. United States Department of Justice*,
590 F.3d 272 (4th Cir. 2010) ....................11, 12

*Lucaj v. Federal Bureau of Investigation*,
852 F.3d 541 (6th Cir. 2017) ....................12

*Mead Data Central, Inc. v. United States Department of the Air Force*,
566 F.2d 242 (D.C. Cir. 1977)....................11

*Rein v. United States Patent & Trademark Office*,
553 F.3d 353 (4th Cir. 2009) ....................10

*Rojas v. Federal Aviation Administration*,
927 F.3d 1046 (9th Cir. 2019) ....................12

*Russell v. United States Department of the Air Force*,
682 F.2d 1045 (D.C. Cir. 1982)....................11

*Ryan v. Department of Justice*,
617 F.2d 781 (D.C. Cir. 1980)....................10

*Williams v. United States Department of Justice*,
556 F. Supp. 63 (D.D.C. 1982)....................11

Defendant Washington Metropolitan Area Transit Authority ("WMATA"), by counsel, files this Opposition to the Motion for Summary Judgment by Plaintiff Husch Blackwell LLP and Reply in Support of WMATA's Motion for Summary Judgment. For all the reasons set forth below, WMATA requests that this Court deny Plaintiff's motion and grant WMATA's motion.

## INTRODUCTION

The parties agree that the sole issue in this action is whether WMATA correctly withheld a single privileged document in response to a records request under WMATA's Public Access to Records Policy ("PARP") by Plaintiff's law firm. WMATA withheld this single document—a draft report commissioned by WMATA to assist WMATA with internal deliberations regarding proposals by a contractor to assess and remedy apparent construction deficiencies in the ongoing construction of the Silver Line Phase 2 project—pursuant to the deliberative process privilege exemption from disclosure under the PARP.[1]

Continuing to demand release of the report despite the exemption, Plaintiff offers only: (1) "inference" that Plaintiff believes to be "obvious"; (2) mischaracterizations of the evidence demonstrating that WMATA reasonably withheld the document; and (3) non-binding caselaw from other circuits contradicting the law in this Circuit. In its Opposition, Plaintiff does not dispute the statement in WMATA's opening brief that "To the extent that a contractor proposes solutions to remedy construction defects for which that contractor is responsible, WMATA must be able to engage in candid, pre-decisional deliberations about the proposed remedies without the fear that

[1] As WMATA explained in its response to Plaintiff's PARP request, the entire PARP report is exempt from disclosure pursuant to the deliberative process privilege, and additional PARP exemptions for information that might impact safety and security or personal privacy would apply to portions of the draft report.

the Plaintiff law firm (possibly representing the contractor) or others may seek to interfere with those ongoing deliberations." WMATA's Motion at 1.

No contrary evidence has been presented to question WMATA's proof that the draft report is pre-decisional and deliberative. In fact, the only evidence before this Court is that WMATA has not completed that analysis or made a final decision on the cross-level deficiency issues and the remediation proposed by the contractor, which was explored in TTT's April 2019 report. SUF ¶10 . WMATA supported its privilege assertion with: (1) a sworn declaration from a WMATA executive with personal responsibility for the draft report and personal knowledge of its origins and content; and (2) a sworn declaration from a consultant engaged to assist WMATA with the report with personal responsibility for the draft report and personal knowledge of its origins and content. Husch Blackwell offers nothing to undercut the reliability of these sworn declarations, or any other basis to upset WMATA's reasonable determination under the PARP.

**RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS**

WMATA provides the following responses to Plaintiff's alleged undisputed facts ("PUF") to identify disputed material facts and correct Plaintiff's unsupported characterizations:

1. In response to PUF 1, there is no genuine factual dispute.
2. In response to PUF 2, there is no genuine factual dispute.
3. In response to PUF 3, WMATA does not dispute that the Silver line project has been the subject of articles, but WMATA disputes Plaintiff's characterization of the public interest. To the extent that Plaintiff is implying that any of the privileged TTT Report has been the subject of media reports, WMATA denies such implication.
4. In response to PUF 4, WMATA disputes Plaintiff's characterization of WMATA's May 21, 2019 acknowledgment Plaintiff's PARP request as non-substantive. WMATA's May

21, 2019 acknowledgment provided substantive information regarding WMATA's understanding of the scope of the request, date restrictions applied to the request, the time period for processing requests, the nature of exemptions under PARP, and the requirement for advance payment for processing fees likely to exceed $250. *See* Ex. 1A to Plaintiff's Motion. WMATA further asserts that PUF 4 is not material because Plaintiff's argument is limited to challenging WMATA's ultimate decision to withhold the Deliberative Process Document pursuant to PARP Exemption 6.1.5, rather than WMATA's administration of Plaintiff's PARP request.

5. In response to PUF 5, WMATA disputes that WMATA's June 6, 2019 emails to Plaintiff were limited to a notice of the large number of records initially identified as potentially responsive to Plaintiff's request or that WMATA committed to providing any estimate by any particular date. As reflected in Exhibit 1-A to Plaintiff's Motion, WMATA:

- advised Plaintiff that WMATA had located a large number of records that may have been responsive to Plaintiff's request;
- notified Plaintiff that it should expect to receive an estimate of the time it would take to review and redact the records, which would involve consulting with a third party;
- notified Plaintiff that it should expect to receive the estimated cost to respond to the request, which Plaintiff would be required to prepay before WMATA started the process; and
- notified Plaintiff that WMATA processes PARP requests in the order received and that WMATA was working earnestly to process all requests.

WMATA further asserts that PUF 5 is not material because Plaintiff's argument is limited to challenging WMATA's ultimate decision to withhold the Deliberative Process Document pursuant to PARP Exemption 6.1.5, rather than WMATA's administration of Plaintiff's PARP request.

6. In response to PUF 6, WMATA disputes Plaintiff's implication that WMATA had any obligation to respond to Plaintiff's repetitive inquiries. WMATA further asserts that PUF 6 is not material because Plaintiff's argument is limited to challenging WMATA's ultimate decision to withhold the Deliberative Process Document pursuant to PARP Exemption 6.1.5, rather than WMATA's administration of Plaintiff's PARP request.

7. In response to PUF 7, there is no genuine factual dispute.

8. In response to PUF 8, there is no genuine factual dispute.

9. In response to PUF 9, there is no genuine factual dispute.

10. In response to PUF 10, WMATA does not dispute that Transportation Technology Transfer, Inc. ("TTT") is a consultant engaged by WMATA or that TTT is an engineering consulting firm specializing in materials for railroad, highway, and airport infrastructure. However, WMATA disputes Plaintiff's characterization of the purpose of WMATA's engagement of TTT. As described in paragraph 8 of WMATA's Statement of Undisputed Facts, when cross-level deficiencies were first identified as one category of quality issues in the construction of Silver Line Phase 2 and the contractor identified cambered concrete turnout ties (non-conforming ties) as a potential cause of those cross-level deficiencies, WMATA undertook internal deliberations to assess the situation and evaluate the solutions proposed by the contractor. *See* Ex. 1 to WMATA's Motion, Decl. of J. Leader ¶ 11; Ex. 2 to WMATA's Motion, Decl. of J. Riley Edwards ¶ 4. To assist in that process and to

complement the expertise within WMATA, a WMATA team supervised by WMATA's Executive Vice President and Chief Operating Officer Joseph P. Leader commissioned a consultant, TTT, to advise WMATA on these deliberations. Ex. 1 to WMATA's Motion ¶ 9.

11. In response to PUF 11, WMATA disputes Plaintiff's implication that the TTT Report was prepared by TTT alone and disputes Plaintiff's (inaccurate) legal conclusion therefrom that the TTT report therefore does not represent the internal deliberations of WMATA. WMATA further disputes Plaintiff's allegations that "WMATA has only provided a conclusory statement" of its positions, and WMATA also disputes the implication that the Court (or Plaintiff) needs "more information" to make a conclusion that the TTT Report is privileged. Plaintiff's Motion ¶ 11. As described in paragraph 8 of WMATA's Statement of Undisputed Facts, when cross-level deficiencies were first identified as one category of quality issues in the construction of Silver Line Phase 2 and the contractor identified cambered concrete turnout ties (non-conforming ties) as a potential cause of those cross-level deficiencies, WMATA undertook internal deliberations to assess the situation and evaluate the solutions proposed by the contractor. *See* Ex. 1 to WMATA's Motion ¶ 11; Ex. 2 to WMATA's Motion ¶ 4. To assist in that process and to complement the expertise within WMATA, a WMATA team supervised by Mr. Leader commissioned a consultant, TTT, to advise WMATA on these deliberations. Ex. 1 to WMATA's Motion ¶ 9. WMATA further disputes Plaintiff's (inaccurate) legal argument that WMATA's explanation of the status of WMATA's decision-making is "conclusory." To the contrary, WMATA submitted a sworn declaration from Mr. Leader and from a representative of TTT describing the nature of the decision-making at issue and attesting that:

- "WMATA has not made a final determination on the quality issues to which the Deliberative Process Document relates, including whether the contractor's proposed remediation plan is acceptable, and WMATA is still working with TTT on finalizing the analysis. WMATA has not made any final decisions on the contractor's proposal, as the matters are still in deliberations within the authority." *See* Ex. 1 to WMATA's Motion ¶ 9 (describing the nature of the decision-making that inspired Mr. Leader to commission the TTT report and the status of WMATA's decision making);

- "While [WMATA and TTT] considered the work related to crosstie camber, additional concerns related to cross-level deviations beyond contract values were identified in the development of the April 2 report. Additional information, investigation, data processing and analysis was required to further investigate the relationship between camber, cross-level, and other potential causes of cross-level in exceedance of contract specifications." Ex. 2 to WMATA's Motion ¶ 4;

- "TTT's work continues on the topics discussed in the report as TTT obtains a deeper understanding of the factors contributing to cross-level deviations. Currently TTT, in its consulting role for WMATA, is still evaluating various solutions proposed by the contractor to solve the cross-level deviation issue, including the topic of camber. Because I understand there are ongoing deliberations within WMATA on these topics, TTT has not finalized" the TTT report. *Id.* ¶ 5

12. In response to PUF 12, WMATA disputes Plaintiff's assertion that Plaintiff took any action to expedite the processing of the PARP request. The PARP includes specific provisions and instructions that requesters must follow to request expedited processing of requests, which Plaintiff did not follow. WMATA further disputes Plaintiff's assertion that it did not respond to Plaintiff's demand that WMATA produce the TTT Report early, and disputes Plaintiff's assertion that such demand was effective to narrow Plaintiff's request. Nor did Plaintiff ever narrow its PARP request. Instead, Plaintiff demanded that "WMATA expedite the review and production" of the TTT Report and stated that it would be "willing to wait for the review and production of the remaining documents in the normal course of business." Ex. 1-D to Plaintiff's Motion. WMATA responded to this demand by advising Plaintiff that "there are approximately 20 requests ahead of" Plaintiff's in

processing and that Plaintiff delayed the processing by refusing to pay the estimated fees. *Id.* WMATA further asserts that PUF 12 is not material because Plaintiff's argument is limited to challenging WMATA's ultimate decision to withhold the Deliberative Process Document pursuant to PARP Exemption 6.1.5, rather than WMATA's administration of Plaintiff's PARP request.

13. In response to PUF 13, WMATA disputes that Plaintiff paid the required fee on July 8, 2019. As asserted in paragraph 22 of WMATA's Statement of Undisputed Facts, and as documented in Exhibit 1-D to Plaintiff's Motion for Summary Judgment, Plaintiff did not pay the required fee until July 11, 2019. WMATA further asserts that PUF 13 is not material because Plaintiff's argument is limited to challenging WMATA's ultimate decision to withhold the Deliberative Process Document pursuant to PARP Exemption 6.1.5, rather than WMATA's administration of Plaintiff's PARP request.

14. In response to PUF 14, there is no genuine dispute. WMATA, however, clarifies that its response to Plaintiff's PARP request withholding the Deliberative Process Document in its entirety also explains that PARP Exemptions 6.1.1 (safety and security) and 6.1.6 (personal privacy) would also apply to portions of the draft report.

**RESPONSE TO PLAINTIFF'S STATEMENT OF DISPUTED FACTS**

While Plaintiff includes a section entitled "Statement of Disputed Facts" in its Opposition, Plaintiff does not dispute paragraphs 1-7, 9, 12-15, 17-19, 21, 23, and 25 of WMATA's Statement of Undisputed Material Facts. With respect to the eight (8) factual statements remaining in WMATA's Motion, Plaintiff does not provide contrary facts for five (5) of them (WMATA factual statements 8, 10, 11, 24, and 26), but merely contends in vague fashion that WMATA should have provided more information. Seeking more information from WMATA is not equivalent to

*disputing* a fact. In other words, Plaintiff has provided the Court with no factual basis for disputing WMATA's undisputed facts. With respect to the remaining three facts addressed in Plaintiff's Opposition (WMATA factual statements 16, 20, and 22), they are procedural matters not raised by Plaintiff as a basis for relief on these motions.

## ARGUMENT

### I. WMATA Properly Withheld the TTT Report to Protect Deliberative Process Privileged Information.

Plaintiff agrees with WMATA that the PARP is closely analogous to the Freedom of Information Act ("FOIA"). Plaintiff's Motion at 11. Plaintiff also recognizes that under PARP Exemption 6.1.5, which is identical to FOIA Exemption 5, WMATA may withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency," *i.e.*, documents that qualify for the deliberative process privilege. *Id.* at 16.

To show that the document withheld here—the TTT Report—is both pre-decisional and deliberative, WMATA supported its motion with, among other things, two sworn declarations attesting that when cross-level deficiencies were first identified as one category of quality issues in the construction of Silver Line Phase 2 and the contractor identified cambered concrete turnout ties (non-conforming ties) as a potential cause of those cross-level deficiencies, WMATA undertook internal deliberations to assess the situation and evaluate the solutions proposed by the contractor. *See* Ex. 1 to WMATA's Motion ¶ 11; Ex. 2 to WMATA's Motion ¶ 4. WMATA further offered proof that, to assist in that process and to complement the expertise within WMATA, a WMATA team supervised by Mr. Leader commissioned a consultant, TTT, to advise WMATA on these deliberations. Ex. 1 to WMATA's Motion ¶ 9. The same declarants explained that these deliberations are ongoing, in part because the draft TTT Report addresses issues with

overlapping significance and impact on a variety of other quality issues WMATA has identified and continues to investigate in the Silver Line construction:

- "WMATA has not made a final determination on the quality issues to which the Deliberative Process Document relates, including whether the contractor's proposed remediation plan is acceptable, and WMATA is still working with TTT on finalizing the analysis. WMATA has not made any final decisions on the contractor's proposal, as the matters are still in deliberations within the authority." *See* Ex. 1 to WMATA's Motion ¶ 9 (describing the nature of the decision-making that inspired Mr. Leader to commission the TTT report and the status of WMATA's decision making);

- "While [WMATA and TTT] considered the work related to crosstie camber, additional concerns related to cross-level deviations beyond contract values were identified in the development of the April 2 report. Additional information, investigation, data processing and analysis was required to further investigate the relationship between camber, cross-level, and other potential causes of cross-level in exceedance of contract specifications." Ex. 2 to WMATA's Motion ¶ 4;

- "TTT's work continues on the topics discussed in the report as TTT obtains a deeper understanding of the factors contributing to cross-level deviations. Currently TTT, in its consulting role for WMATA, is still evaluating various solutions proposed by the contractor to solve the cross-level deviation issue, including the topic of camber. Because I understand there are ongoing deliberations within WMATA on these topics, TTT has not finalized" the TTT report. *Id.* ¶ 5.

Plaintiff does not offer evidence to rebut these statements. In its pleadings, Plaintiff merely contends that WMATA should produce the TTT Report on the grounds that: (1) the TTT Report is a draft; (2) Plaintiff assumes that TTT Report includes factual information; and (3) WMATA used a consultant to assist with the preparation of the report. Plaintiff's unsupported contentions are not enough to overcome the deliberative process privilege.

### A. WMATA Has Not Invoked the Deliberative Process Privilege Because the TTT Report Is a Draft; WMATA Invokes the Deliberative Process Privilege Because the TTT Report is Deliberative Process Privileged.

WMATA did not assert the deliberative process privilege to protect the TTT Report from disclosure because the TTT Report is a draft, as Plaintiff claims. *See* Plaintiff's Motion at 14-15.

WMATA asserted the deliberative process privilege because the TTT Report is pre-decisional and deliberative, as set forth in WMATA's Memorandum in Support of Motion for Summary Judgment and the declarations of Mr. Leader and Dr. Edwards, the only individuals who submitted Declarations in this matter with personal knowledge of WMATA's ongoing analysis and the TTT report itself. *See* WMATA's Motion at 10-11.

WMATA raised the status of the report—that it remains a draft—because it is the sort of detail that Plaintiff claims WMATA's declarations lack. Specifically, it provides an indication of the ongoing status of WMATA's deliberations and thus, the harm that would be imposed if WMATA were forced to reveal the document during those deliberations. Absent some additional substantive argument by Plaintiff, the mere fact that a document is a draft does not defeat the deliberative process privilege, and WMATA's Motion should be granted.

**B. The Deliberative Process Privilege Protects Factual Information in These Circumstances.**

Plaintiff's theory that the deliberative process privilege can never be invoked to protect factual information is incorrect. Facts can be protected where, as here, "the manner of selecting or presenting those facts would reveal the deliberat[iv]e process, or if the facts are 'inextricably intertwined' with the policy-making process." *Ryan v. Dep't of Justice*, 617 F.2d 781, 790 (D.C. Cir. 1980) (citing *EPA v. Mink*, 410 U.S. 73, 87-88 (1973) (footnotes omitted) (emphasis added); *see also Rein v. U.S. Patent & Trademark Office*, 553 F.3d 353, 375 (4th Cir. 2009) ("Information reasonably described as "facts" when looked at in the vacuum that R & HW describe are nonetheless protected from disclosure when—as revealed when examining the information's context—disclosing that information as part of a larger document would reveal the very predecisional and deliberative material Exemption 5 protects."). If disclosure of factual information would "expose" the deliberative process, it is just as protected as any other

information. *See Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977).

Plaintiff assumes there is factual material in the TTT Report. Even if that were true, WMATA's engagement of a consultant to provide a pre-decisional study as WMATA's deliberations continue should not be disturbed, even as to what alleged "facts" may or may not be true and what "facts" are being investigated in the first place. To interfere with WMATA's ability to independently analyze remedial proposals by a contractor by chilling the candid discussion of alleged "facts" would defeat the purpose of the deliberative process, as the alleged "facts" are necessarily intertwined with what WMATA is investigating, how it is investigating, and what the consultant has included in a draft report before decisions have been made (even on whether the consultant's report correctly set forth the "facts"). Because any factual material in the TTT Report would itself reveal WMATA's process, by revealing which "facts" were selected for investigation, the full TTT Report is protected from disclosure under the deliberative process privilege. *See, e.g., Russell v. U.S. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982); *Williams v. U.S. Dep't of Justice*, 556 F. Supp. 63, 65 (D.D.C. 1982).

**C. The Fourth Circuit Recognizes the Consultant Corollary.**

The Fourth Circuit has expressly recognized the "consultant corollary," which provides that "communications between [an] agency and its partner can be understood as 'intra-agency' for purposes of Exemption 5" and thereby shielded from disclosure. *Hunton & Williams v. U.S. Dep't of Justice*, 590 F.3d 272, 280 (4th Cir. 2010). As this Court has previously explained, "[u]nder the 'consultant corollary' doctrine, FOIA Exemption 5 applies to records submitted by outside consultants that 'played essentially the same part in an agency's process of deliberation as documents prepared by agency personnel might have done.'" *Energy & Envt. Legal Inst. v. U.S. Dep't of State*, No. 1:15-cv-423, 2017 WL 3763853, at *9 (E.D. Va. Aug. 28, 2017) (O'Grady, J.).

Thus, in this jurisdiction, the consultant corollary applies to any consultant, not just lawyers. *See id.* (holding that the government properly applied Exemption 5 and the consultant corollary to emails with a non-governmental organization about engagement with congressional staffers regarding a potential climate change agreement). In its Opposition, Plaintiff did not cite Judge O'Grady's recent, on-point decision in the *Energy & Envt. Legal Inst.* case.

Notably, Plaintiff does not contest that the consultant corollary covers the TTT Report. Rather, citing cases from other jurisdictions, Plaintiff only urges the Court to "reject[] the consultant corollary all together." Plaintiff's Motion at 17. Essentially, Plaintiff asks this Court to contravene binding precedent in this Circuit.

Plaintiff relies on two cases from other circuits, one of which harshly criticizes the other. *Id.* at 17–18 (citing *Rojas v. Fed. Aviation Admin.*, 927 F.3d 1046 (9th Cir. 2019), and *Lucaj v. Fed. Bureau of Investigation*, 852 F.3d 541 (6th Cir. 2017)). In *Lucaj*, the Sixth Circuit read *Department of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001), as foreclosing the consultant corollary. *Lucaj*, 852 F.3d at 548. That position was rejected by the Fourth Circuit in *Hunton*, 590 F.3d at 279, and also by the Ninth Circuit in *Rojas*, 927 F.3d at 1058. Indeed, *Lucaj*'s reading of *Klamath* is incorrect because *Klamath* explicitly refrained from deciding this issue, even noting that "consultants may be enough like the agency's own personnel to justify calling their communications 'intra-agency.'" 532 U.S. at 12. Unlike the Sixth Circuit, the Ninth Circuit acknowledged that it was not bound by precedent when deciding on the applicability of the consultant corollary. *Rojas*, 927 F.3d at 1058.

But regardless of any new law created in the Ninth Circuit, this Court is bound by the Fourth Circuit's holding that the consultant corollary is part of Exemption 5. *See Hunton*, 590 F.3d at 280 (holding that cases applying the consultant corollary "make good sense" because

"[s]uch communications can be considered 'intra-agency' for the simple reason that the outside attorney or consultant is collaborating with an agency in the agency's pursuit of the public interest"). Therefore, this Court should not deviate from Fourth Circuit precedent on the consultant corollary.

The TTT Report was prepared by WMATA's outside consultant that was "play[ing] essentially the same part in [the] agency's process of deliberation as . . . agency personnel might have done." *Energy & Envt. Legal Inst.*, 2017 WL 3763853, at *9. Plaintiff does not argue otherwise. Accordingly, WMATA properly withheld the TTT Report pursuant to PARP Exemption 6.1.5 and the consultant corollary.

## II. Plaintiff's Mere Suspicion Is an Insufficient Basis to Demand Release of Deliberative Process Privileged Information or *In Camera* Review.

Plaintiff demands, apparently in the alternative, that WMATA "at least provide a redacted version of the TTT Report," or that the Court conduct an *in camera* review of the TTT Report. Plaintiff's Motion at 19-20. Plaintiff's only basis for these alternatives is its mere suspicion of the veracity of the sworn declarations submitted in support of WMATA's motion. *Id.*

Plaintiff's suspicion is an insufficient basis to demand release of any portion of a deliberative process privileged document. To require more from WMATA's declarants to support invocation of the deliberative process privilege than the accurate, complete descriptions of the information subject to the privilege and particular reasons that WMATA must preserve confidentiality of that information would require WMATA to reveal the very privileged information it needs to protect. It would be senseless to require WMATA to disclose privileged information to protect that same privileged information. It would also be inconsistent with caselaw from within this Circuit, *Hugler v. Bat Masonry Co., Inc.*, Civil Action No. 6:15-cv-28, 2017 WL 1207847, at *3 (W.D. Va. Mar. 31, 2017), which expressly permits an agency to withhold privileged documents

on the basis of agency declarations demonstrating that an authorized WMATA employee asserts the privilege after personal consideration and based on particularized descriptions of the information protected and the reasons for confidentiality.

WMATA responded to Plaintiff's PARP request in accordance with the PARP policy and sound practice. Plaintiff law firm's disappointment at not receiving a deliberative process privileged document exempt from disclosure under the PARP is an insufficient basis to impose more burden on WMATA or this Court.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion for summary judgment, grant summary judgment in WMATA's favor, and grant such further relief as this Court deems proper.

Dated November 8, 2019

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY
By counsel

s/Attison L. Barnes, III
Attison L. Barnes, III (VA Bar No. 30458)
WILEY REIN LLP
1776 K Street, NW
Washington, DC 20006
Tel: (202) 719-7000
Fax: (202) 719-7049
abarnes@wileyrein.com
*Counsel for Defendant*
*Washington Metropolitan Area Transit Authority*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 8, 2019, I electronically filed the forgoing with the Clerk of Court by using the CM/ECF system, which will send a Notice of Electronic Filing to the following:

George Edward Stewart, III
Brian Paul Waagner
HUSCH BLACKWELL LLP
750 17th St NW, Suite 900
Washington, DC 20006
Tel: 202-378-2307
Fax: 202-378-2319
george.stewart@huschblackwell.com
brian.waagner@huschblackwell.com

s/Attison L. Barnes, III
Attison L. Barnes, III (VA Bar No. 30458)
WILEY REIN LLP
1776 K Street, NW
Washington, DC 20006
Tel: (202) 719-7000
Fax: (202) 719-7049
abarnes@wileyrein.com
*Counsel for Defendant Washington Metropolitan Area Transit Authority*